473 P.2d 472

**R. J. WALKER, Appellant,**

v.

**COUNTY OF COCONINO, a body politic, Appellee.**

**No. 1 CA–CIV 1059.**

Court of Appeals of Arizona,
Division 1,
Department B.

Aug. 13, 1970.

Rehearing Denied Sept. 28, 1970.
Review Denied Nov. 10, 1970.

Gibbons, Kinney, Tipton & Warner, by Jack C. Warner, Phoenix, for appellant.

Jennings, Strouss & Salmon, by Jon L. Kyl, Phoenix, for appellee.

JACOBSON, Judge.

The liability of a county for failing to remedy or warn of an unsafe condition upon a county highway is presented in this appeal from a directed verdict entered in the County's favor in the Superior Court of Maricopa County.

At about noon on December 12, 1964, plaintiff-appellant R. J. Walker, was traveling northward on County Highway 209 just inside the southernmost boundary of defendant-appellee Coconino County. Plaintiff, immediately after traversing a rise and as he began a downhill curve to the right, encountered a patch of ice. The ice, which was the width of the highway, extended approximately 100 yards. Plaintiff's vehicle slid on the ice, spun around, and came to rest against the right-hand embankment facing the direction from which it had come and with its front end protruding out into the northbound lane of traffic. After his passengers had disembarked and while he was attempting to drive out, another vehicle came down the hill and struck the front end of plaintiff's vehicle injuring him.

Although there possibly was a diamond shaped sign marked "Ice" located some 8-10 miles to the south, the evidence was to the effect that there were no barricades or warnings near the accident scene and no sand, gravel, or cinders on the icy curve.

The testimony of the plaintiff and his witnesses, when viewed in the light most favorable to plaintiff, discloses that the accident occurred on a clear day and that there had been no storm in the area for at least two days prior to the day of the accident. The highway was free of moisture except for two or three other much smaller

patches of ice at different spots on the highway south of the accident scene. There was, however, snow on the ground on either side of the highway, both at the accident scene and for some miles south thereof.

Plaintiff presented no evidence as to how the ice formed, how long it existed on the highway or whether the county knew or should have known of its existence. Plaintiff does not argue that the ice was anything other than a natural accumulation resulting from the elements and not caused by any negligent act of defendant.

■ At the close of plaintiff's case, and based on the state of the record outlined above, the trial court granted defendant's motion for a directed verdict on the ground that plaintiff had failed to prove a *prima facie* case of negligence. We agree with the trial court's conclusion.

The mere fact that there was ice on a county highway and a vehicle skidded thereon does not impose liability on the county. The claimant must show facts giving rise to a duty, recognized by law, on the part of the county and a concurrent failure by the county to comply with that duty in order to establish the county's negligence. See Avechuco v. Awtrey, 106 Ariz. 44, 470 P.2d 451 (1970); Kreisman v. Thomas, 12 Ariz.App. 215, 469 P.2d 107 (1970).

There is split of authority concerning the duty of a state or any of its political subdivisions in the case of "natural" accumulations of ice on the roadway. A natural accumulation occurs where rain or snow falls on the roadway, or runoff from thawing snow flows across the street, and subsequently freezes causing ice to form on the road. In such a case the moisture on the roadway results wholly from the elements and is not caused by any act of the governmental body.

Apparently most jurisdictions allow liability to attach where there exists simultaneously the following conditions: (1) the ice has been pushed, trampled or otherwise formed into humps or ridges or other shapes of such size and location as to constitute an obstruction or a dangerous condition apart from its original mere slipperiness, (2) such a condition is unusual in comparison with general conditions throughout the city (*i. e.*, isolated patches), (3) either actual knowledge of the isolated icy condition exists or such condition has been allowed to remain on the street for a period of time sufficient to give rise to constructive notice on the part of the governmental body, and (4) there is a reasonable opportunity after notice to remedy the condition. *Compare* Jennings v. United States, 291 F. 2d 880 (4th Cir. 1961), *with* Weisner v. Mayor and Council of Rockville, 245 Md. 225, 225 A.2d 648 (1967). Underlying the above rules is the premise that what the governmental body is required to do to offset the danger created by the elements is that which is reasonable under the circumstances, that the applicable standard of care is that of an ordinary prudent man, and that the governmental body is not an insurer of travelers on its roadways. Weisner v. Mayor and Council of Rockville, *supra*; Dodd v. State, 31 Misc.2d 112, 223 N.Y.S.2d 32 (1961).

■ This latter-stated general standard as applied to governmental subdivisions in the maintenance of their roadways is also the law in Arizona. City of Phoenix v. Clem, 28 Ariz. 315, 237 P. 168 (1925); State v. Watson, 7 Ariz.App. 81, 436 P.2d 175 (1968). However in the application of the above general standard to fact situations dealing with natural accumulations of ice, some courts have ruled that, *as a matter of law*, a governmental body is not liable for injuries proximately caused by natural accumulations of ice on its streets, regardless of notice or length of time the ice has remained on the highway and regardless of whether such condition be general or isolated where the only danger presented is the mere natural slipperiness of the ice in its natural state. *See, e. g.,* Smith v. Dist. of Columbia, 89 U.S.App.D.C. 7, 189 F.2d 671 (1951); Commonwealth v. Brown, 346 S.W.2d 24 (Ky.App.1961). Such rulings are based on the recognition that

the governmental body cannot control the falling of snow or rain and the subsequent thawing and freezing thereof, and on the propositions that it is an impracticable burden to require the governmental body to keep its streets and highways completely free from ice in the winter. *See, e. g.,* Smith v. District of Columbia, *supra;* Nebel v. City of Pittsburgh, 386 Pa. 394, 126 A.2d 449 (1956).

To limit liability to only those occasions where the ice has been acted upon in some manner to cause it to become an obstruction seems to us to be unduly harsh and insupportable. Ice in its natural state of slipperiness appears to this court to be at least as dangerous to travel as ice which has been pushed or trampled into humps and ridges. However, there are other means of ameliorating the danger to human life presented by mere slippery ice on roadways than its physical removal which the cases so limiting liability fail to consider. Admittedly upon consideration of all the relevant circumstances, including size of the road network, location of the danger in isolated rural sections of large counties or states, and availability of money, manpower, and machinery, etc. in a particular fact situation it may well be unreasonable as a matter of law to require the governmental body to *remove* the ice. But given those same circumstances it might not be unreasonable to require such minimal precautions as the posting of flares, barricades or other warning signs near the danger areas. Cf. Jennings v. United States, 291 F.2d 880 (4th Cir. 1961). *But cf.* Hooker v. Town of Hanover, 247 App.Div. 623, 288 N.Y.S. 290 (1936).

■ While Arizona has not passed on the specific issue of liability for injuries caused by natural accumulations of ice on a roadway, we are of the opinion that the rule adopted in City of Phoenix v. Clem, *supra,* is applicable to this issue. We realize that *Clem* involves a defect in the roadbed itself but we can discern no reason for not applying the same principle to any danger on a road be it a "chuckhole" *in* the road caused by rain, or ice *on* the road caused by rain or snow. Thus, if a roadway should suddenly and without fault of the governmental body, come *by any means* into a condition dangerous to travel, the governmental body is liable for damages occasioned thereby if the governmental body fails to act in a reasonably prudent manner under the circumstances. In the case of ice, however, to determine whether the acts of the governmental body are reasonable, due regard must be given to whether the icy condition is general or isolated, whether the governmental body has actual notice, or notice implied or presumed by lapse of time of the condition, and whether a reasonable time for correcting the condition has elapsed after such notice. Cf. *Clem,* supra.

■ An isolated patch of ice on a downhill curve, obstructed from view by a rise in the road, which covers the entire width of the roadway and extends for approximately 100 yards is without question a "condition dangerous to travel." We agree that Coconino County may well have a duty to either remove, sand, or warn an unsuspecting public of this isolated patch of ice, but the existence of such a duty depends upon whether the county had actual or constructive notice of the ice, and an opportunity after such notice to take remedial measures. The precautions necessary for the county to sustain its duty to mitigate the danger would be determined by the standard of the ordinary prudent man under the circumstances, *Clem, supra,* but this latter question becomes an issue only if there first is evidence of the existence of a duty to take precautionary measures in the first instance.

In this case, the plaintiff failed to surmount the initial obstacle to imposing liability. There was no evidence in the record which would indicate that Coconino County had actual notice of the ice on the curve, nor was there sufficient evidence to allow the jury to determine whether the county should be charged with constructive notice of that particular dangerous condition. Although the period of time neces-

sary under the circumstances to give rise to constructive notice is usually a jury question, City of Phoenix v. Boggs, 1 Ariz.App. 370, 403 P.2d 305 (1965), the mere fact that there was no storm within two days prior to the accident is as a matter of law insufficient to establish that the ice had been on the highway for any given length of time absent additional evidence of constant below-freezing temperatures.

 Counsel for plaintiff would have us look to the opening argument of defendant for evidentiary support of plaintiff's burden of proof. Not only is the opening argument of counsel not "evidence," Plaks v. Florida East Coast Railway Co., 175 So.2d 216 (Fla.App.1965), but in this case the transcript discloses that defense counsel carefully and emphatically prefaced his remarks with the admonition to the jury that what he was about to say was not evidence and could not be considered by them as evidence. The situation presented here is wholly unlike the situation that was recently before the Arizona Supreme Court in Trollope v. Koerner, 106 Ariz. 10, 470 P. 2d 91 (1970). That case dealt with a directed verdict entered at the close of plaintiffs-appellants opening statement. The court held that granting a motion for a directed verdict under such circumstances was proper only where the opposing party had made a "fatal admission or unequivocally revealed an absolute defense." In addition to other obvious differences in the circumstances of the two cases, there was no admission—fatal or otherwise—contained in appellee's opening argument in this case. Appellee merely told the jury what he *thought* the evidence to be presented *might* disclose.

Even assuming constructive notice was present the record is devoid of any evidence bearing on the issue of whether there was a reasonable opportunity under the circumstances for the county after acquiring such notice to ameliorate or alleviate the dangerous condition, or what types of precautionary or remedial efforts would have been reasonable under the circumstances.

Judgment affirmed.

EUBANK, P. J., and HAIRE, J., concur.