519 P.2d 211

**STATE of Arizona, Appellee,**

**v.**

**Darwin Loy VANDERLINDEN, Appellant.**

**No. 1 CA–CR 571.**

Court of Appeals of Arizona,
Division 1,
Department B.

Feb. 28, 1974.

Rehearing Denied April 9, 1974.

Review Granted April 30, 1974.

Gary K. Nelson, Atty. Gen. by Stanley L. Patchell, Asst. Atty. Gen., Phoenix, for appellee.

Ross P. Lee, Public Defender for Maricopa County by Rudy Gerber, Deputy Public Defender, Phoenix, for appellant.

## OPINION

JACOBSON, Chief Judge of Division One.

This appeal raises the issue of the failure of the trial court in a theft by embezzlement prosecution, where the value of the property embezzled is in dispute, to instruct on the difference between grand theft by embezzlement and petty theft by embezzlement.

On October 14, 1971, the grand jury of Maricopa County, Arizona, returned an indictment against the defendant, Darwin Loy Vanderlinden, charging him with having "committed theft by embezzling from Stacey Construction Co., [Inc.] [money] of the value of more than $100 all in violation of A.R.S. §§ 13–681, 13–682, as amended 1968 and §§ 13–688 and 13–671." Following a plea of not guilty and a trial by jury, the defendant was found "guilty of theft by embezzlement, *a felony* as charged in the indictment." After denial of defendant's motion for new trial, he was sentenced to the State Prison for a term of not less than six nor more than ten years.

The pertinent facts are as follows: The defendant was employed by Henry and Horne, an accounting firm which was conducting an audit for Stacey Construction Co. The defendant was the auditor assigned to perform the audit. On February 26, 1971, the defendant informed Mr. Stacey, President of the company, that documentary stamps costing $22 were required for company stock certificates. The defendant presented Mr. Stacey with a construction company check for Mr. Stacey's signature, which he signed. When cashed, the check was for the amount of $22,000.00 which defendant subsequently converted to his own use. Four witnesses testified as to the amount of the check when Mr. Stacey

signed it. One witness testified that several minutes prior to the check's presentation to Mr. Stacey, it was made out for $22.00. Mr. Stacey testified that he was positive that the check was not made out for $22,000.00 although he could not recall the amount of the check. Two other witnesses testified, based upon defendant's admission to them, that defendant had made out the check for $22,000.00 and presented it to Mr. Stacey intending, upon Mr. Stacey's signing, to disclose to him the extremely inadequate internal controls existing within his company.

Thus from the evidence, the issue was raised as to whether at the time Mr. Stacey signed the check it was for $22.00 and was subsequently altered to read "$22,000 or whether the check when given into the defendant's control was already made out for $22,000." This disparity in the evidence was the subject of comment by both defense counsel and the prosecution in their closing argument to the jury and was the subject of a motion for a directed verdict by defense counsel at the close of the state's case. While it was the defense's theory, as outlined in counsel's opening statement to the jury, that the $22,000 represented a purchase by Mr. Stacey of an interest in a mobile home park development owned by the defendant, the evidence failed to develop this theory during trial. The defendant did not take the stand.

At the close of the State's case, defense counsel made the following argument in relation to his motion for a directed verdict.

"The elements necessary to establish embezzlement are a trust relation upon the grounds of control of property by virtue of the trust relation and fraudulent appropriation of the property for the use and purpose not in the due and lawful execution of the trust authority. [Cases cited.]

"The only evidence of any amount entrusted to the defendant came from Dale Stacey, who testified that he saw a check for $22.00 made out to the defend-

ant which his father, Arthur Stacey, subsequently signed for documentary stamps.

"Arthur Stacey swore before God that the check did not read $22,000 when he signed it.

\*     \*     \*     \*     \*     \*

"Arthur Stacey testified that: one, he never intended to trust the defendant with more than $22.00; two, he doesn't know what the amount of the check for documentary stamps was when he signed it, but he swore to God it wasn't made out for $22,000 when he signed it.

"Therefore the only direct evidence of any amount entrusted to the defendant by the complaining witness was the $22 which Dale Stacey testified was the amount of the documentary stamps.

"Defendant patently could not embezzle more than was entrusted to him; the maximum he could embezzle then was $22.00. He cannot then be guilty of embezzling more than $100, and the State has failed to sustain the burden of proof of the indictment, and a directed verdict of not guilty should be given to the jury.

\*     \*     \*     \*     \*     \*

"The one theory of the State's case seems to be that the defendant received a check for $22.00 which was entrusted to him but by the complaining witness, and then altered or erased the check to read $22,000.

"If he did, in fact, alter the check, it does not constitute the crime of embezzlement; it constitutes the crime of forgery, for which he was not indicted, and for which he is not on trial.

"Therefore, the jury should be directed to acquit him of the crime of embezzlement, inasmuch as the State has totally failed to prove that he has ever held in trust any sum more than $22.00."

Following denial of the defendant's motion for a directed verdict, the defendant rested. Defense counsel's argument to the jury was basically that set forth in his argument to the court for a directed verdict.

The prosecutor countered this argument by advising the jury:

"Whether you take his statement to Dean Young, his statements to Ray Taylor, or whether you take the theory of the State that that check for $22.00 was not completely made out [but] was raised to $22,000 by inserting a comma and adding the figure doesn't matter.

"[Defense Counsel] Your Honor, I hate to interrupt opposing counsel, but if counsel is arguing the crime of forgery, which has not been introduced in this case, I would ask that the jury be given an instruction that they cannot find my client guilty of embezzlement; if he did, in fact, alter the check, it was forgery.

"The Court: I will instruct the jury on the law that governs the case.

"[Prosecuting Attorney]: He is not charged with the crime of forgery; he is charged with the crime of embezzlement, and the question is: Did he have control of that property, and did he use it for his own purposes and not in the due and lawful execution of his trust?

"I think there can be no other conclusion, certainly no other reasonable conclusion that the defendant did do this and that the defendant is, indeed, guilty of this crime, and I would ask you to so find."

Following the trial court's instructing the jury, it inquired of counsel whether they had any additions or corrections to the instructions as given. Defense counsel responded as follows:

"Your Honor, as I so rudely interrupted counsel in his closing argument when he made reference to altering a check, there is no evidence in this case that the check was altered. If the check was, in fact, altered, it constitutes a separate and distinct crime from that with which the defendant has been charged.

"I would move the court at this time to instruct the jury that if they find that the defendant did, in fact, alter the check, that they cannot find him guilty of the crime of embezzlement."

This requested instruction was denied.

■ The defendant first attacks the sufficiency of the indictment in that a "fiduciary relationship" was not specifically alleged to exist between the defendant and Mr. Stacey. Our reading of the indictment shows full compliance with Rule 115, Criminal Rules of Procedure, 17 A.R.S. (1956). Both A.R.S. §§ 13–681 and 13–682, specifically referred to in the indictment, relate that proof of such a relationship is required in order to convict. In our opinion, the indictment fully apprised the defendant of the crime charged sufficiently to prepare his defense to meet the charge, and he is protected against further prosecution for the same offense in the future. See State v. McCormick, 7 Ariz. App. 576, 442 P.2d 134 (1968), vacated on other grounds, 104 Ariz. 18, 448 P.2d 74 (1968).

The defendant's second contention presents a more difficult question. As phrased by counsel this question is whether defendant was convicted of the crime of forgery (altering a check) or embezzlement. In our opinion, this question, as phrased, does not really focus upon the problem created by the conflict of testimony as to the actual amount of the check delivered into the custody of the defendant for the alleged purpose of buying documentary stamps. We arrive at this conclusion based upon an analysis of the statutes under which the defendant was charged.

A.R.S. § 13–681 defines theft by embezzlement as "the fraudulent appropriation of property by a person to whom it has been entrusted . . . ." A.R.S. § 13–682 goes on to define who may be guilty of theft by embezzlement as being one who ". . . has in his control . . .

property for the use of any other person, and fraudulently appropriates to any use or purpose not in the due and lawful execution of his trust the property . . . under his control by virtue of his trust . . . ."

Theft by embezzlement is punished by A.R.S. § 13–688 "in the manner prescribed for theft of property of the same name or value of that embezzled, *and if the property embezzled is an evidence of debt, or right of action, the sum due upon it . . . shall be taken as its value."* (Emphasis added.)

In ascertaining the "manner prescribed for theft of property of the same name or value" reference must be made to the theft statute in general and A.R.S. § 13–663 in particular which, insofar as pertinent, provides that theft of money of the value of more than $100 is grand theft, while theft of $100 or less is petty theft. A.R.S. § 13–671 punishes grand theft as a felony while petty theft is punishable as a misdemeanor (carrying a maximum of less than one year.)

From this analysis of the statutes it is apparent that one of the real questions before the jury was whether the defendant was entrusted with only $22.00 and diverted that amount, (not buying the documentary stamps) and thus could be guilty only of a misdemeanor or whether he was given control of $22,000 and diverted that sum, which would make him guilty of a felony.[1]

■ We must now determine whether defendant, by his requested instruction, preserved on appeal this issue as to the lack of instruction to the jury on its duty to determine value. The only instruction requested by defendant which could possibly touch on this issue is the oral request

---

1. Of course, under the evidence presented, the jury could have found the defendant guilty of theft by embezzlement of $22 and also forgery (altering a check). However, the defendant was not indicted in the alternative with forgery and therefore we confine ourselves to a discussion of the felony versus misdemeanor problem. Also, theoretically, the jury might have also found the defendant guilty of theft by false pretenses (A.R.S. § 13–661, subd. A(3)) if the jury believed that the defendant told Mr. Stacey that the check was for only $22, when in actuality the jury found the check at time of signing to be $22,000. For the reasons above stated, we likewise do not pursue this theoretical possibility.

previously quoted in this opinion. Abstractly, this quoted instruction is not a correct statement of the law for it informs the jury that if they found that the defendant altered the check they could not find him guilty of embezzlement, while as is pointed out in the footnote, the defendant could still be guilty of embezzling $22.-00, a misdemeanor. Normally, it is not error for a trial court to refuse a requested instruction which is an incorrect statement of the law. State v. Denton, 101 Ariz. 455, 420 P.2d 930 (1966); State v. Colvin, 81 Ariz. 388, 307 P.2d 98 (1957). Nor is the trial court normally required to correct incorrect requested instructions. State v. Harris, 107 Ariz. 41, 481 P.2d 504 (1971). However, these normal lack of error rules must be viewed against the larger backdrop of a trial court's duties in a criminal case, and that is, that the trial court, not counsel, has the duty in a criminal case to instruct the jury on the general, fundamental principles of law which pertain to the offense charged. State v. Betts, 71 Ariz. 362, 227 P.2d 749 (1951). This duty is present when the matter upon which an instruction should be given is so fundamental that the jury could not arrive at a proper disposition of the case without it. State v. Hudgens, 102 Ariz. 1, 423 P.2d 90 (1967) cert. den'd 389 U.S. 873, 88 S.Ct. 162, 19 L.Ed.2d 155 (1967).

In this case, in view of defense counsel's motion for directed verdict and argument to the jury, we cannot believe that the trial court did not realize the import of the diametrically opposed evidence as to the amount of the check given to the defendant, and therefore, counsel's failure to add to the requested instruction the words, "as charged in the indictment" could not have misled the trial court. Moreover, the state had the burden of proving every essential element of the indictment, one of these essential elements being that the value of the property taken (by statute the face amount of check at time of issuance, A.R.S. § 13–688), exceeded $100. When the state's own evidence of this value was so contradictory that the jury could have reasonably found that the state had not sustained its burden of proof as to this essential element of the indictment, we are of the opinion that an instruction on this issue was "so fundamental that the jury could not arrive at a proper disposition of the case without it." State v. Hudgens, *supra.*

In stating the above opinion, we are aware of the several Arizona decisions holding that a failure to instruct on a lesser included offense, in absence of a request therefor, is not error. State v. Mercer, 13 Ariz.App. 1, 473 P.2d 803 (1970); State v. Mendoza, 107 Ariz. 51, 481 P.2d 844 (1971); Uren v. State, 27 Ariz. 491, 232 P. 398 (1925). However, for contrary expressions, *see*, State v. Madden, 104 Ariz. 111, 449 P.2d 39 (1969); Miranda v. State, 42 Ariz. 358, 26 P.2d 241 (1933). In this case we need not decide which of the various conflicting Arizona Supreme Court decisions on this issue are to be applied, for, in our opinion, under the totality of the circumstances in this case, the trial court committed error in not instructing on this fundamental issue of punishment. This "totality of circumstances" includes the fact that defense counsel as well as the prosecuting attorney expressly brought to the trial court's attention the discrepancies in the testimony as to value which would differentiate the misdemeanor and felony aspects of the crime of theft by embezzlement plus the fact that the prosecuting attorney in his closing argument may have misled the jury in believing that the amount of the check actually received and subsequently embezzled was immaterial.

In this regard, we are of the opinion that the punishment consequences of the value determination are so fundamental that if the evidence is in conflict on this issue, the trial court must instruct on it even in the absence of a valid request therefor in order for the trial court to properly exercise its duty of sentencing in accordance with the legislative directives.

For the foregoing reasons, the judgment and sentence of the trial court are reversed and the matter remanded for a new trial.

HAIRE, P. J., concurs.

EUBANK, Judge (dissenting).

I would affirm the judgment and sentence of the trial court and therefore dissent from the majority opinion.

First, in my opinion, there is substantial evidence in the record to support the embezzlement conviction. Appellant's counsel, in his opening statement, extensively outlined appellant's defense to the indictment: that Mr. Stacey gave the appellant the $22,000 check as a part of a business deal involving them both. Then, as a part of the State's case in-chief, two witnesses testified that the appellant admitted to them that he had obtained Mr. Stacey's signature on the $22,000 check as a part of appellant's audit procedure in order for appellant to demonstrate to Mr. Stacey the extremely inadequate internal controls existing within Mr. Stacey's construction company. After obtaining the check from Mr. Stacey, appellant told these witnesses that he could not bring himself to do what he had intended to do with the check so he used the check and its proceeds for his own purposes. This evidence is, in my opinion, sufficient to support the jury verdict on appeal.

Before passing from this point, I acknowledge that the opening statement of appellant's counsel is not evidence in the ordinary sense. *See* Walker v. County of Coconino, 12 Ariz.App. 547, 473 P.2d 472 (1970). However, for some purposes, the opening statement of counsel can take on the character of a judicial admission. *See* Trollope v. Koerner, 106 Ariz. 10, 470 P.2d 91 (1970). I believe that such a case exists here for appeal purposes, where the appellant did not take the stand in his own defense and presented no defense evidence, but instead relied upon his counsel's opening statement, in its broad narrative and documentary form, to place his theory of the case, his defense, before the jury in order to create doubt.

Second, regarding the instruction question, appellant failed to comply with Rules 5(b)(10) and 15, Rules of the Supreme Court, A.R.S. 17A, which require that such instruction be set forth in "haec verba in the appendix to the brief", consequently, the court is not obliged to consider the trial court's refusal to give appellant's requested instruction, made subsequent to the court's instruction of the jury. *See* State v. Madden, 104 Ariz. 111, 449 P.2d 39 (1969). Furthermore, even reviewing the instruction shows that it was not in proper form or correct at law; consequently, it was not error for the trial court to refuse to give the jury a legally defective instruction. *See* State v. Denton, 101 Ariz. 455, 420 P.2d 930 (1966). Under the facts of this case, it is my opinion that the trial court did not commit fundamental error in not instructing on the lesser-included offense.